ADDIE HAMBLET *v.* MARY J. HARRISON ET AL.

FRAUDULENT CONVEYANCES. *Husband and wife. Fraud of deceased husband. Widow. Estopped.*

Where a husband, before marriage, fraudulently acquired a claim of title to land, his widow cannot, under a conveyance from him during coveture, hold the land as against the defrauded owner; nor can she recover of such owner the money paid to him by her husband in attempting to hide his fraud. *Ricketts* v. *Jolliff*, 62 Miss., 440; *McLean* v. *Letchford*, 60 Miss., 169, cited.

FROM the chancery court of Quitman county.

HON. A. McC. KIMBROUGH, Chancellor.

Mrs. Harrison, appellee, was complainant in the court below; Mrs. Hamblet, appellant, was defendant there. From a decree in complainant's favor defendant appealed to the supreme court.

This suit was instituted by Mrs. Harrison and her children, complainants in the court below, against Mrs. Hamblet, defendant, to recover of her certain lands described in the bill, and for the cancellation of her claim to the same. The lands had been conveyed to Mrs. Hamblet by her husband, F. M. Hamblet, since deceased. The lands were owned by appellees, and were sold to the state of Mississippi in March, 1883, for

the taxes for the year 1882. The state subsequently conveyed to one Alexander, who, in turn, conveyed to Crawford. At the time of the sale Mrs. Harrison was more than twenty-one years of age; the other appellees were minors. In 1890 Hamblet, an attorney, was employed by the appellees to institute proceedings for the cancellation of the tax title or the redemption of the interest of those entitled to redeem the land. Crawford was in possession of the land at that time, and Hamblet instituted against him an ejectment suit, and, as alleged in the bill of complaint, advised his clients that he had begun a suit in chancery for the cancellation of the tax titles, or for the redemption of the land. Judgment was entered in the ejectment suit in favor of the plaintiffs for the recovery of the lands, but the land was charged with a lien for the sum of $200 in favor of the defendant on account of permanent improvements. Within three months after the rendition of the judgment in the ejectment suit, Hamblet procured an execution to be issued against the land involved in the suit, in order to make the above mentioned sum of $200 for the defendant, and at the sale under this execution, Hamblet procured the land to be bid in in the name of one L. Marks for the sum of $500. Marks was not present at the sale, and knew nothing of the fact that the land had been bought in his name, until afterwards when told by Hamblet. The judgment for $200 in favor of Crawford had been assigned by him to Marks. No money was ever paid out by Marks on this land purchased in his name. Hamblet paid the sum of $200 on account of the judgment, which had been assigned to Marks. The remaining $300 of the bid Hamblet retained until a later date, which he finally paid to plaintiffs, after deducting out of this amount his fee for services. Hamblet afterward procured from Marks a conveyance of the title that had been taken in his name at the execution sale. Hamblet afterward married the appellant in this case, and conveyed the lands to her, and shortly afterward died. In 1898 the appellees in this case filed their bill in this cause against Mrs.

Hamblet, setting forth in their bill all the facts above stated, and alleging specifically that each of the acts done by the said Hamblet, from the beginning of his correspondence with Mrs. Harrison up to and including the conveyance to his wife, was fraudulent and void; that each of the said acts had been undertaken and carried out for the express purpose of defrauding the complainants out of the lands in controversy. The defendant answered the bill, and denied all the allegations contained in it. Proof was taken on both sides, and substantially the above facts were adduced.

On final hearing complainants were granted the relief prayed for, and from the decree to that effect this appeal was prosecuted.

*P. H. Lowrey,* for appellant.

The deeds from the state to Alexander, from Alexander to Crawford, and from Crawford to Marks, were excluded, but for what reason I am at a loss to see. While Marks, at the time of his sale to Hamblet, had another claim to the land, through an execution sale, which is assailed by complainants as fraudulent and void, and which was probably derived from a common source with complainants, which I do not admit, yet if he had a title from a different source on which he could have recovered, he and those claiming under him, the appellant, may stand upon that title, and defeat the suit of complainants to remove the other as a cloud on their title. *Griffin* v. *Sheffield,* 38 Miss., 359; *Wade* v. *Thompson,* 52 Miss., 367.

A most revolting case of fraud and breach of trust on Hamblet's part is alleged, but not proven. The testimony of the complainant, Mrs. Harrison, is the only evidence tending to establish fraud, and she does not make out her case.

There is nothing in the evidence to show that this execution sale was at the instance of Hamblet.

The witness Marks testifies that Hamblet came to him with a request that he, Hamblet, be allowed to bid the land in at

the execution sale in his, Mark's, name, for the benefit of him-
self. This was probably such a breach of trust to his clients
as would have defeated his title, if the objection had been
promptly made by the clients. It certainly would have war-
ranted the clients in taking the land at his bid, but they cannot
concur in the sale, and receive and use the money, and then
recover the land. If this bill sought to hold the attorney as
trustee, and the purchase by him for their benefit, it could not
be done now for three reasons: 1. Complainants have waited an
unreasonable time. 2. They received from Hamblet and used
the money. 3. The land has passed into the hands of a third
party for valuable consideration without notice.

The correspondence exhibited with Mrs. Harrison's deposi-
tion shows that she, who was acting for all the defendants,
knew, before she received the money, that her attorney had pur-
chased the land, and at what price, and she made his good bar-
gain a reason for paying him only a small fee. We ask that the
decree be reversed because no fraud on the part of Hamblet is
proven. Because if such fraud had been proven, it could not
effect his innocent assign for value without notice. Because com-
plainants, both adults and minors, are estopped by the receipt
and use of the purchase money and their long delay. Because,
independent of all these questions, defendant holds through F.
M. Hamblet, through Marks, through Crawford, through Alex-
ander, through the State, a tax title, which is unassailed in the
evidence, the judgment in the ejectment suit not effecting this
title, which at the time of the suit was held by Marks, who was
not a party to the suit.

If this court should not agree with us in this, we ask that at
least the complainants, before they dispossess the defendant,
be required to reimburse her the $500 paid out to them and
for them in the recovery of the land from Crawford, together
with interest—that this be made a charge on the land. This
is asked by the cross-bill, and would be no more than doing
equity. The land having been conveyed by F. M. Hamblet to

the defendant, and the right to recover back whatever he paid out for and to them being an equity running with the land, we can see no reason for their recovering the land without at least reimbursing her to this extent.

*M. E. Denton,* on the same side.

If F. M. Hamblet wrongfully bought the land of his client at the execution sale, in violation of his attorneyship, complainants should have first proceeded against him or his administrator after the land had passed to appellant. In either case they have delayed too long. 3 Am. & Eng. Enc. Law, 342. Laches should bar even the minors in this case, as they used the proceeds of the execution sale to buy necessaries. But if the minors are not, the adults, at least, are precluded. Besides this, a client who pays no fee, as in this case, should not be allowed to complain.

Appellant should not be made to suffer for the fraud of F. M. Hamblet, for the reason that she is an innocent purchaser from him without notice. *Sanders* v. *Sorrell,* 65 Miss., 288; 14 Am. & Eng. Enc. Law, 283 (2d ed.); *Loughridge* v. *Bowland,* 52 Miss., 546; *Fulton* v. *Woodman,* 54 Miss., 158; *Hall* v. *Green,* 60 Miss., 47; *Tuteur* v. *Chase,* 66 Miss., 476; *Bank* v. *Cook, etc., Co.,* 70 Miss., 587; *Clark* v. *Rainey,* 72 Miss., 151, etc.

The fact that appellant, several years after the fraud had been committed by F. M. Hamblet, married him, and afterward relied upon him as her attorney to investigate the title to the land when she bought it from him, would not make her a party to his fraud. His anti-nuptial sins are not a part of the responsibilities assumed by her at marriage, nor did she become guilty by trusting in him after she became his wife.

In any view of the case, however, appellant should be allowed to retain the land in controversy upon paying to appellees the difference between the real value of the property at the time of the execution sale, and the amount which they admit they

have already received on it. *Millsaps* v. *Chapman,* 76 Miss., .942.

*John W. Cutrer,* for appellees.

Appellees' case is based on the theory that Hamblet held the title to the land in trust for their benefit, because, first, his conduct was so flagrantly fraudulent that a trust in their favor resulted therefrom; and second, leaving out the question of actual or express fraud, the purchase of the land by him under· the circumstances created a trust in their favor by operation of law.

An agent cannot directly or indirectly have an interest in the sale of the property of his principal without the consent of his principal, after full knowledge of every matter known to the agent which might affect the principal. *Coats* v. *Coats,* 63 Ill., 74; *Ebelmesser* v. *Ebelmesser,* 99 Ill., 548; *Tyler* v. *San-*. *born,* 4 L. R. A., 218.

If the agent buy his principal's property, he must show that the principal knew all the details of the transaction.· *Porter* v. *Woodruff,* 36 N. J. Eq., 174. In this connection the attention of the court is called to the case of *Johnson* v. *Outlaw,* 56 Miss., 541.

Speaking of the purchase of a. client's property by his attorney, the court considered it immaterial whether regarded as actual or constructive fraud. It is not a question of good or bad faith; it is a legal· disability imposed by law, a positive prohibition, springing out of the relation of attorney and client.

The record shows, however, that this suit was begun within a reasonable time after appellees learned the facts in the case. The defense of laches or negligence cannot be successfully interposed; it may be very safely concluded that this suit was brought in time to prevent such a defense. It matters not how long a time may elapse before a suit is brought if the fraud upon which the suit is predicated has been concealed. Such was the case with these appellees.

If recovery against Hamblet could have been obtained, what attitude does his wife occupy toward the property in question? He perpetrated the fraud, and she has the fruits of it. Shall she be permitted to say that she knew nothing about the fraud of her husband, and that she is an innocent purchaser for value?

It is perfectly true that Mrs. Hamblet claimed to know nothing of the transaction, which led to the vesting the title in her husband. She claims to have paid a valuable consideration for the lands in question, but it appears from the record that she was unable to pay anything like a reasonable value for the lands. A sale by an agent to his wife of lands which are subject to agency, without the express consent of the principal, is voidable. *Tyler* v. *Sanborn,* 4 L. R. A., 218; *Cameron* v. *Lewis,* 56 Miss., 601; *Robinson* v. *Lewis,* 68 Miss., 69; *Clark* v. *Rainey,* 72 Miss., 151.

CALHOON, J., delivered the opinion of the court.

In this case the husband, before his marriage, acquired his claim of title in actual fraud of appellees, and afterward married and conveyed the land to his wife, and died. If living, and if he had not conveyed it, he could not hold it against those whom he had defrauded. Neither can his wife. Public policy forbids. It is said with great force and clearness by Judge Cooper, in *Robinson* v. *Lewis,* 68 Miss., on page 71 (8 So., 259; 10 L. R. A., 101; 24 Am. St. Rep., 254), that: "If the rule which prevents one spouse from securing a title where the other is disqualified, rests only upon a supposed privity of estate between them, it might well be argued that our statutes upon the subject have destroyed its foundation. But the rule is founded upon considerations of public policy, and conclusively imputes to the one, as derived from the other, knowledge of those facts, the existence of which precludes the other from action. The opportunities that would be afforded for fraudulent practices would be so numerous, and the difficulty

of exposing them so great, that courts apply the doctrine of estoppel to both, and thus close the door that offers the temptation." Neither can enjoy the fruits of the fraud of the other, nor strengthen the rotten claim by the tax title exhibited in this record. No more than the husband could, can the wife, by cross bill, claim back the pitiful sum he paid to the widow and orphans, because he paid it in attempted obscuration of his fraud. *Ricketts* v. *Jolliff,* 62 Miss., 440; *McLean* v. *Letchford,* 60 Miss., 169.

Having settled the principles on the interlocutory appeal, the case is affirmed, and remanded for procedure on the lines of the chancellor's decree.