WALKER *et al. v.* WOODS *et al.*

(Division B. Dec. 5, 1932.)

[144 So. 703. No. 30263.]

472

(Division B.  May 22, 1933.  Suggestion of Error Overruled May 22, 1933.)

[148  So.  354.  No.  30263.]

For former opinion, see 144 So. 703.

**Owen & Garnett,** of Columbus, and **Stovall & Stovall,** of Okolona, for appellant.

**J. H. Ford,** of Houston, for appellees.

.Ethridge, **P. J.**, delivered the opinion of the court.

In March, 1902, Henderson Walker executed a will, in which he first directed that his debts and funeral expenses be paid, and he then bequeathed and devised to his wife, Sylvia Walker, all his personal property, including choses in action, money, and all rights and credits, and a life estate in all real estate owned by him wherever situated. He then devised to Henderson Walker, Jr., whose real name was Henderson Woods, the northwest quarter of section 27, township 12, range 6 east, in Chickasaw county, Mississippi, and devised other lands to Jasper Woods, Jr.

Henderson Walker, Jr., died in May, 1902, and the appellant George Walker, who was one of the executors named in the will, and the only one who qualified to act as executor, filed a report in the chancery court, setting forth that he had paid all debts; that the estate was considerably involved, a number of creditors being secured by deeds of trust on the land, making it necessary to economize as much as possible in order to make the estate pay out; and that, having fully administered said estate, he was then able to settle with the widow, Sylvia Walker, and he showed to the court vouchers for each creditor so paid, and set forth a list of persons and claims paid, among which was voucher No. 8, "E. J. Ezell, $289.10," voucher No. 9, "E. J. Ezell, Trustee, $159.17." This final report was filed on November 26, 1907, and was

sworn to by George Walker, and with this report he set forth the sum received each year. He was allowed a commission on the total amount received and fees to his attorney.

The decree approving this final decree was entered November 26, 1907.

On September 18, 1905, C. C. Jolly, trustee in a deed of trust given by Henderson Walker to E. J. Ezell, duly recorded in Chickasaw county, foreclosed said trust deed, and sold the lands therein embraced to Sylvia Walker, executing to her his trustee's deed therefor; and on September 25, 1905, Sylvia Walker conveyed the same land above described to Lucretia Walker, appellant in the case at bar, for a consideration recited to be one thousand eight hundred dollars.

It appears from the testimony of George Walker, husband of Lucretia Walker, and others, that he (George Walker) attended the trustee's sale and bid in the land for his wife, Lucretia Walker, paying the consideration of one thousand eight hundred dollars above mentioned, but by mistake of the scrivener Sylvia Walker's name was written as the purchaser instead of Lucretia Walker, and that, on this error being discovered, an attorney had a deed prepared from Sylvia Walker to Lucretia Walker as above recited.

Sylvia Walker was the life tenant and lived until the year 1929, when she died. Henderson Walker, also named Henderson Woods, the son of Jasper Woods, Sr., and the brother of Jasper Woods, Jr., had died in the meantime between the death of Henderson Walker, Sr., and Sylvia Walker, and this suit was brought for the possession of the above-described lands conveyed to Henderson Walker, alias Henderson Woods, by the will of Henderson Walker, and for rent from the time of the death of the life tenant, Sylvia Walker, to the time of the filing of the suit.

George Walker and Lucretia Walker had given a deed of trust to W. T. Jaggers on said land.

The chancellor, after hearing all the evidence, sustained the prayer for relief and rendered a decree accordingly, from which decree this suit is prosecuted.

It was sought by the appellants, Lucretia and George Walker, to prove by said George Walker that the final account above referred to did not state the true facts, but involved some funds received by him from a barber shop, which it is claimed, was owned by Sylvia Walker; and sought to introduce the book of accounts and receipts and expenditures which would show that, in fact, the deeds of trust securing the debts to Ezell et al., were not paid out of funds that came into his hands as executor, but from funds, in part, which Lucretia Walker had paid for the property at the trustee's sale. The evidence to explain and contradict the report of George Walker, administrator, by George Walker as a witness, was rejected by the chancellor.

It is contended by the appellees (Jasper Woods, Sr. and Jr.), that Lucretia Walker was incapacitated to bid at the trustee's sale because George Walker, her husband, was administering the estate of Henderson Walker, and that it was his duty to pay the debts first from the proceeds of funds coming into his hands, and that he (George Walker) was incapacitated to contradict his final account as administrator and the recitals therein made under oath.

We are of the opinion that George Walker was incompetent as a witness to contradict the final account made and filed by him in settlement of the estate, and that the chancellor did not err in refusing to receive his evidence and explanations in regard thereto.

It is true that Lucretia Walker would not be bound by the report so made, and that she would be permitted to impeach that report by other witnesses if they were a-

vailable; but the administrator, George Walker, was not competent to impeach his solemn act and report, and the decree of the court procured by him in discharge of his duties as administrator.

We are further of the opinion that Lucretia Walker was incapable of purchasing at the trustee's sale, on account of the fact that her husband could not purchase at such sale. It is the public policy in this state to prohibit a wife from purchasing under such circumstances as her husband could not purchase on account of a fiduciary relationship.

We are also of the opinion that it was incompetent to impeach the deeds to Sylvia Walker and from Sylvia to Lucretia Walker by parol evidence after the death of Sylvia Walker. Even if such proof was admissible generally, the long delay in seeking a correction would render George and Lucretia Walker guilty of laches, which would bar relief in that regard.

The life tenant, Sylvia Walker, had a life estate in the lands, and the remainderman, Henderson Walker, or Woods, could not bring any action to obtain his rights against Sylvia Walker during her lifetime. Had the deed been corrected as soon as the mistake was discovered in a proper manner, and had the title then been vested in Lucretia Walker as purchaser, Henderson Walker or Woods could promptly have challenged her right to purchase at the sale or to acquire the land, by asserting his right as remainderman.

We do not think it was error for the court to admit the facts that the deeds of trust were marked "Satisfied" on the record. This evidence was competent for the purpose of showing, not that the deeds of trust, in fact, were settled and paid, but as a circumstance taken in connection with evidence tending to show that the deeds of trust were satisfied and canceled prior to the land sale.

We have examined the other contentions carefully, and

do not think they require a reversal of the court below. The decree will therefore be affirmed.

Affirmed.

## On Suggestion of Error.

**Ethridge, P. J.,** delivered the opinion of the court on suggestion of error.

The judgment of the court below was affirmed on December 5, 1932, and is reported in 144 So. 703. .

On the suggestion of error it is earnestly insisted that Mrs. Lucretia Walker was not disqualified to become a purchaser at the trustee's sale of the property involved, because George Walker, executor of the will of Henderson Walker, deceased, was not conducting the sale.

George Walker had qualified as executor prior to the sale, and his report to the court as executor of the assets in hand prior to the date of sale was sufficient to show that he had property in his possession sufficient to pay all the probated debts, including the debt secured by the deed of trust. It was clearly his duty, as such executor, to convert, with reasonable dispatch, the property into money, and to pay the probated debts. He could not, consistently with his duty, let the deeds of trust be foreclosed and then either he or his wife become the purchaser at a sale thereof.

In Bailey v. Dilworth, 10 Smedes & M. 404, 48 Am. Dec. 760, it was held that executors and administrators are bound to the exercise of such prudence and caution in the administration as a judicious man, looking to his own interest, would exercise in regard to his own affairs. Manifestly, no prudent or judicious man would permit a sale under similar circumstances.

In Deanes v. Whitfield, 107 Miss. 273, 65 So. 246, it was held that an executor who has not been discharged

has such relation to a beneficiary for life as precludes him from acquiring a tax title thereto, and, where one purchases from a life tenant, such person is chargeable with the facts, and cannot recover from a remainderman for improvements placed on the property.

In Whitfield v. Miles et al., 101 Miss. 734, 58 So. 8, 11, it was held that: "Under the terms of this will, there was not only a life estate created in an undivided interest in this land, . . . but there was also a vested right in the remainderman which the trustees could not defeat."

In Clark v. Rainey, 72 Miss. 151, 16 So. 499, it was held that, where land is owned by B and G as tenants in common, is sold for taxes, and B and wife redeem, their grantees hold as tenants in common with G, with disabilities as such.

In Hamblett v. Harrison, 80 Miss. 118, 31 So. 580, 581, it was held that, where a husband, before his marriage, acquired a title, in actual fraud, to land, his widow, under a conveyance from him during coverture, could not hold it as against those whom he had defrauded. In discussing this case, Judge CALHOON, quoting from Robinson v. Lewis, 68 Miss. 71, 8 So. 258, 259, 10 L. R. A. 101, 24 Am. St. Rep. 254, said that: "If the rule which prevents one spouse from securing a title where the other is disqualified rested only upon a supposed privity of estate between them, it might well be argued that our statutes upon the subject have destroyed its foundation. But the rule is founded upon considerations of public policy, and conclusively imputes to the one, as derived from the other, knowledge of those facts the existence of which precludes the other from action. The opportunities that would be afforded for fraudulent practices would be so numerous, and the difficulty of exposing them so great, that courts apply the doctrine of estoppel to both, and thus close the door that offers the tempta-

tion." The case of Fox v. Coon, 64 Miss. 465, 1 So. 629, holds to similar effect.

In Wade v. Barlow, 99 Miss. 33, 54 So. 662, it was held that, where a purchaser is put in possession, he cannot afterwards acquire a title, set it up in opposition to the vendor, and recover damages for breach of his covenant, and, if he extinguish an incumbrance, or buy in an outstanding title, all he can ask or require is payment of the money so laid out; and that this reason is equally operative, whether the purchase of the incumbrance be by the vendee or his wife, because there is such an identity between them that what under such circumstances cannot be done by the husband cannot be done by the wife.

Applying these principles to the case at bar, under all the facts, it is clear that George Walker could not have become the purchaser at the trustee's sale, it being his duty to protect both the interest of the life tenant and the remainderman by paying off the debts with the assets he had collected, or which he could, by reasonable diligence, have collected; and that, being in this condition of disqualification, his wife would also be disqualified and prevented from purchasing. This would be true even if the wife had acquired a deed directly from the trustee, as seems from Walker's testimony was his purpose, and which his bid really contemplated being done. In fact, however, the trustee's deed was made to Mrs. Sylvia Walker, widow and the life tenant of the deceased, Henderson Walker, and, instead of correcting the mistake when it was discovered, if it was a mistake, Lucretia Walker accepted a warranty deed from Mrs. Sylvia Walker, and took no steps to correct the error. The deed from Mrs. Sylvia Walker to Mrs. Lucretia Walker did not recite any mistake of the trustee in making the deed, or that the deed from Mrs. Sylvia Walker to Mrs. Lucretia Walker was made for the pur-

pose of correcting such mistake, and the accounts introduced by George Walker, as administrator, between himself and Mrs. Sylvia Walker, showed that this money was paid to Mrs. Sylvia Walker by George Walker.

The vendee, Mrs. Lucretia Walker, having elected to accept the warranty deed from Mrs. Sylvia Walker, and letting that stand until after Mrs. Sylvia Walker died, is precluded from now setting up this contention. That would be laches of the grossest kind, and it would be impossible for the court to obtain from Mrs. Sylvia Walker the facts as they existed in her understanding.

The report of George Walker as administrator shows that he had paid all the claims probated against the estate, including these deeds of trust, and the notes which they secured were shown to have been duly probated. It is also shown in his report that he had collected assets of considerable value and was allowed a commission on all the assets shown in his report.

In the present case, he attempts to show that this report was incorrect, and that, in fact, he had no such assets in his hands. This clearly he cannot do. Faith must be reposed in judicial proceedings, and an administrator who collects assets and receives credit for them, and receives commission on them, will not be permitted thereafter to show that the report he made was, in fact, false or fraudulent. In Crowder v. Shackelford, 35 Miss. 321, it was held that, if at the instance of an administrator and upon his suggestion that his accounts are incorrect, they may be referred to a commissioner or auditor to be restated, he cannot afterwards object that the appointment was unauthorized by law, and that an examination of his accounts was then improper and not warranted by the pleadings. It was also held that as a general rule an administrator has no control or authority over the freehold estate of his intestate; yet it is subject to the payment of debts, before the actual appropriation of it for that purpose, and the heir may

waive his right in it, and a compliance with the conditions prescribed by law, for the regular exercise of the power of the administrator over it, and may consent to his acts appropriating it to the payment of his ancestor's debts.

In Singleton v. Garrett, 23 Miss. 195, it was held that the final decree of the probate court, on final settlement of an administrator, when regularly made after due notice given, is conclusive against the administrator himself.

In Coffin v. Bramlitt, 42 Miss. 194, 97 Am. Dec. 449, it was held that annual accounts of guardians are final, and conclusive against them in the court where rendered and can only be set aside by due course of procedure. Inaccuracies in such accounts arising from sheer inadvertence, oversight, or palpable mistake or miscalculation may, in proper cases, be corrected in the court where returned; and he cannot impeach the balance shown by saying that it was collected in depreciated issues of broken or suspended banks, or confederate money, or invested in confederate bonds.

In Lowry v. McMillan, 35 Miss. 147, 72 Am. Dec. 119, it was held that an administrator is no longer subject to jurisdiction of the probate court when he, in obedience to a valid decree of that court, has made final distribution and has been discharged; and that an administrator, who, of his own accord, undertakes to decide who are entitled to the estate and makes distribution, acts at his peril.

These cases and others of our own court show that the administrator, George Walker, was not competent to testify as a witness in this case to sustain the claim of his wife to the lands involved, and that the chancellor was correct in refusing to permit him to open and falsify his accounts which had been closed for many years.

In the original opinion heretofore rendered, we directed that said opinion was not to be reported in the state report, but, in view of the importance developed by the arguments in this suggestion of error in respect thereto, we think it proper to direct that the original opinion be reported in the state report with the opinion here on the suggestion of error.

Suggestion of error overruled.