PATRIDGE *et al. v.* RIDDICK (WILLIAMS, INTERVENER).

(Division B. Nov. 25, 1935.)

[164 So. 221. No. 31950.]

**N. W. Sumrall**, of Belzoni, and **Bradford & Lamb**, of Itta Bena, for appellants.

V. B. Montgomery, of Belzoni, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee filed his bill in the chancery court of Humphreys county against appellants, John A. Patridge, and his wife, Frances, and his daughter, Mamie Lusk, to cancel a patent issued to the wife and daughter by the land commissioner of the state in October, 1934, to two hundred forty acres of land in that county. The cause was heard on bill, answers, and proofs, resulting in a decree in appellee's favor granting the relief prayed for.

Appellee owned two hundred forty acres of land in Humphreys county. On the 15th day of January, 1932, he entered into a written contract with appellant John A. Patridge, agreeing to sell him the two hundred forty acres of land for two thousand two hundred dollars on time payments of four hundred forty dollars each. Under the contract the vendee was under duty to pay all the taxes on the land and redeem it from a tax sale to the state made in April, 1931, for the taxes of 1930. Default was made in payment of the purchase-money installments, also in the payment of taxes and redemption from the tax sale. In October, 1934, appellant John A. Patridge purchased the land from the state, receiving a patent in the name of his wife for one hundred sixty acres of it, and another patent in the name of his daughter, a minor, for the balance, eighty acres. He borrowed the money from M. T. Williams with which to make the purchase, for the repayment of which, with other indebtedness he was due Williams, he and his wife and daughter, the latter being a minor, executed their note, to secure which they gave a deed of trust on the land. The whole matter of the purchase of the land from the state from beginning to end was attended to by John A. Patridge,

Appellee resided in Memphis, Tennessee, and John A. Patridge and his family at Isola, in Humphreys county. From the time the contract of sale was entered into by the parties up to a month or two before the land was purchased from the state, there was correspondence between appellee and John A. Patridge with reference to the payment of the purchase-money installments, the taxes, redeeming it from the tax sale, and, after the state's title became perfect, repurchasing it from the state. As stated, the sale to the state took place in April, 1931; under the law, therefore, the time for redemption expired in April, 1933. After that the state's title to the land was perfect, and that was the condition of the title when the land was purchased from the state in, October, 1934.

The evidence for the appellee, which the court found to be true and was justified in doing so, showed that from the time appellee contracted to sell the land to John A. Patridge up to a very short time before the latter purchased it from the state for his wife and daughter he recognized appellee as the owner of the land, and himself as a mere tenant. After the state's title had become perfect, the land commissioner, pursuing a fixed policy of his, assured appellee that the original owner would first be given an opportunity to purchase the land from the state. As late as September, 1934 (the purchase from the state was in October, 1934), appellee had a conversation with Patridge about the payment of the taxes. Patridge stated that he would have to have the use of the rents for that purpose. After the state's title had become perfect in 1933, Patridge paid appellee rent for that year. In October, 1933, Patridge wrote appellee that he was going to give him all the place made that year and asked that he be given a chance for another year, and on November 9th, following, he wrote again that he had not been able to meet his contract, but had done his best and if appellee would not give him an extension he would lose a good deal. In January, 1934, appellee wrote Patridge and suggested that when he re-

deemed the land the application should be made in the names of both of them. He used this language: ''Of course you understand while you have a contract you never got title to the land which was still in me until it was sold for taxes. . . . Accordingly, my idea is that the patent should be in both our names. When you write please let me know what you think of this arrangement.'' On March 6, 1934, Patridge wrote appellee that the state tax laws were so arranged and changed ''that we are safe now for at least 8 or ten more months.'' Within less than eight months from that time Patridge bought the land from the state for his wife and daughter.

Appellant contends that the state's title to the land having become perfect, the trust relation ordinarily existing between vendor and vendee had disappeared, and Patridge had the right under the law to purchase the land from the state either for himself or his wife and daughter. Appellee maintains the converse of that proposition—that the fiduciary relation had never ceased, and for that reason the purchase inured to appellee's benefit. As above shown, although the state's title had matured, appellee claimed that Patridge was a mere tenant and still under obligation not only to pay the purchase money, but to pay all taxes, and, in addition, purchase the state's title for the benefit of both of them. Patridge not only acquiesced in but expressly recognized that claim by appellee. In other words, the relation of vendor and vendee had never been changed, both parties recognized that it still existed although there was an outstanding title in the state.

In our opinion, the case stands exactly as if the state had not acquired title. The controlling principle is that where a purchaser has been put in possession of land he cannot afterwards acquire a title in opposition to his vendor; if he extinguish an encumbrance or buy an outstanding title, all he can ask or require is the repayment of the money so put out. The reason of the rule results from the trust relation existing between vendor and

vendee; it is to preserve the confidence that ought to exist between them, and to prevent undue advantage by the vendee from information acquired by means of the contract. The vendee can do nothing to the prejudice of the vendor so long as that relation continues. The vendee can neither purchase for himself, his wife, nor minor child constituting a part of his family. There is such an identity between them that what cannot be done by the husband and father for himself cannot be done by him for his wife and minor child. Hardeman v. Cowan, 10 Smedes & M. 486; Taylor v. Eckford, 11 Smedes & M. 21; Robinson v. Lewis, 68 Miss. 69, 8 So. 258, 10 L. R. A. 101, 24 Am. St. Rep. 254; Walker v. Woods, 166 Miss. 471, 144 So. 703, 148 So. 354; Wade v. Barlow, 99 Miss. 33, 54 So. 662; Cameron v. Lewis, 56 Miss. 76. The principle involved is somewhat like that existing between attorney and client. In the last-mentioned case an attorney was employed to examine the title to a tract of land for the purpose of ascertaining its condition with reference to taxes, and to do whatever might be necessary to protect his client's title and interest in the land. The court held that by reason of his trust relation he could not use the information obtained in his investigation in acquiring title to the land held by the state for taxes for his wife and infant brother-in-law.

Williams intervened in the cause, and in the decree the court made the money advanced by him to Patridge to purchase the land from the state a charge against the land.

Affirmed.