## LEE *v.* LEE, et al.

No. 41010 March 23, 1959 109 So. 2d 870

*Simrall, Aultman & Pope,* Hattiesburg, for appellant.

*Breed O. Mounger,* Tylertown; *Emmette P. Allen,* Brookhaven, for appellees.

Holmes, J.

This suit is for the adjudication and confirmation of the title to the oil, gas and other minerals in certain land located in Walthall County, Mississippi, and described as the W½ of the NE¼ of Section 6, Township 1 North, Range 13 East of Washington Meridian, less 5 acres in the NE corner of said land heretofore sold

to the trustees of the colored church located adjacent to said land, comprising 75 acres of land more or less.

F. M. Lee died intestate in February 1937. At the time of his death he was the owner in fee simple of the aforesaid land subject to a deed of trust thereon dated October 19, 1936, executed by the said F. M. Lee in his lifetime to Henry Mounger, trustee for the benefit of George J. Bourn, securing an indebtedness of $325, evidenced by two promissory notes of even date, each for the sum of $172.50, due one and two years from their date respectively. The said F. M. Lee left surviving him as his sole and only legal heirs his widow and thirteen children, all of whom were adults with the exception of two of the children who were each 17 years of age. Each of said heirs on the death of the said F. M. Lee acquired an undivided one-fourteenth interest in the aforesaid land as tenants in common.

Subsequent to the death of the said deceased, one of his legal heirs, namely, his son, Latimer Lee, paid one of the aforesaid notes. Default having been made in the payment of the other of said notes, the trustee in the deed of trust, Henry Mounger, foreclosed the aforesaid deed of trust on June 5, 1939, and at the foreclosure sale struck off and sold said land to Mrs. Annie Louise Mounger, the wife of the said trustee, for a recited consideration of $100. Thereafter, on October 10, 1939, Mrs. Henry Mounger, Jr., who is the same person as Mrs. Annie Louise Mounger, the wife of the trustee in said deed of trust, conveyed said land to Luther L. Lee for a recited consideration of $250.

On April 29, 1944, the said Luther L. Lee conveyed said land to Velma Hart Mark, reserving unto himself all oil, gas and minerals in or under said land. On November 23, 1955, the said Luther L. Lee executed an oil, gas and mineral lease on said land to Union Producing Company. The said lease was thereafter recognized and

validated by all those having a mineral interest in said land, and the said lease is therefore not here involved.

On April 18, 1957, the heirs of the said deceased other than the said Luther L. Lee, and certain grantees of mineral rights conveyed by some heirs of the said deceased other than Luther L. Lee, brought this suit in the Chancery Court of Walthall County against the said Luther L. Lee, seeking to have the title to the minerals in said land adjudicated and confirmed in them in accordance with their respective interests. This suit, therefore, involves only the title to the oil, gas and minerals in said land and not the surface thereof.

It was charged in the bill of complaint that each of said heirs acquired an undivided one-fourteenth interest in said land as tenants in common upon the death of the said F. M. Lee. It was further charged in the bill of complaint that the sale of said land at the aforesaid foreclosure sale and the conveyance of said land by the trustee in said deed of trust to his wife were void upon the ground that the trustee in the deed of trust was prohibited from purchasing said land at said foreclosure sale, and that his wife was likewise prohibited from becoming the purchaser at said foreclosure sale. It was further charged in the bill of complaint that the attempted sale and conveyance of said land by the wife of the trustee to Luther L. Lee was void, and that the reservation by the said Luther L. Lee of the oil, gas and minerals in said land in the deed executed by him to Velma Hart Mark was held by the said Luther L. Lee for the benefit of all of the cotenants in said land.

On trial of the case the proof on behalf of the complainants showed that following the death of the said F. M. Lee his widow and such of the children as had been occupying with him the home place, which adjoined the land here in question, remained in possession of the land here in volved and continued in the actual possession of the same by fencing and cultivating the same,

cutting trees thereon, and grazing cattle and mules thereon until the year 1949, when the said Velma Hart Mark entered into the possession thereof under the attempted conveyance thereof to her executed by Luther L. Lee on April 29, 1944. The proof on behalf of the complainants further showed that the heirs of the said F. M. Lee other than Luther L. Lee had no knowledge that Velma Hart Mark was claiming the land until she advised them in 1949, and that certain of the said heirs then contacted the said Luther L. Lee and the said Luther L. Lee told them that he would see to it that all of them received their respective interests. The chancellor found that the purchase of the land by the wife of the trustee at the foreclosure sale and the subsequent conveyance thereof by the trustee to his wife were void, and that the reservation of the oil, gas and other minerals by the said Luther L. Lee in his attempted conveyance of the surface of the land to Velma Hart Mark was held by the said Luther L. Lee for the benefit of all of his cotenants.

The chancellor further found that upon the death of the said F. M. Lee, his widow and children other than the said Luther L. Lee who had theretofore been occupying the home place adjoining the land here in question continued in the actual possession thereof, fencing the same, cutting timber thereon, and grazing cattle and mules thereon, and cultivating a part thereof until the year 1949 when they became advised that Velma Hart Mark was claiming the land under the aforesaid attempted conveyance to her by the said Luther L. Lee. The chancellor further held that the attempted conveyance by Henry Mounger, the trustee, to his wife was null and void and that the attempted subsequent acquisition of said land by Luther L. Lee from the said Mrs. Henry Mounger, Jr., the wife of the trustee, amounted to a redemption of the land for the benefit of all of the cotenants. Accordingly, the chancellor entered a decree

granting the prayer of the original bill, adjudicating and confirming title to the mineral interest in said land in the complainants and setting out the respective interests of the complainants and the defendant.

It is the contention of the appellant that the purchase of said land at the foreclosure sale by the wife of the trustee was in all respects valid and that upon the subsequent conveyance of the said land by Mrs. Henry Mounger, Jr., to the appellant, he became a bona fide purchaser thereof and acquired title to the property for his individual benefit and not for the benefit of his cotenants.

It is further the contention of the appellant that the appellees are precluded from asserting any claim of ownership to the oil, gas and other minerals under said land under the doctrines of estoppel and laches. We are of the opinion that these contentions of the appellant are not well founded.

 The appellant admits that it is the general rule that a trustee cannot himself buy land at a foreclosure sale when he is the trustee making the sale. Such is generally recognized by the authorities. The trustee in a deed of trust is the agent of both parties, and he therefore occupies a fiduciary relationship to both parties. Rawlings v. Anderson, et al., 149 Miss. 632, 115 So. 714. The rule is founded upon public policy. In 37 Am. Jur., Mortgages, page 96, it is said: "A person who stands in the relation of attorney in fact to both debtor and creditor is estopped from purchasing the property for his own benefit on the principle that such purchase is against public policy."

This principle was recognized by this Court more than a century ago in the case of White v. Trotter, et al., 14 S. & M. 30, 53 Am. Dec. 112. In that case, Chief Justice Sharkey, writing the opinion of the Court, said: "Judge Storey enumerates the several relations to which this doctrine applies, including parent and child, guardian

and ward, client and attorney, principal and agent, trustee and cestui que trust. . . ''

It is the contention of the appellant, however, that this rule has no application to the case at bar for the reason that Mrs. Mounger, the wife of the trustee, was the highest bidder at the foreclosure sale and that no proof was offered to show that there was any fraud or collusion between the trustee and his wife. We are unable to agree with the appellant in this contention. Since the rule is founded upon public policy, the motives of the parties and the question as to whether or not they acted honestly or dishonestly are not material considerations. In the case of White v. Trotter, et al., supra, Chief Justice Sharkey, in the opinion of the court, said:

''Jeremy, in speaking of this rule in its application to trustees, says, 'But it being considered that no court of justice is equal to the full investigation of the truth, or capable of avoiding deception in all cases of this kind, this court will not affect to sift into the motives of the parties in every such instance, or to ascertain whether the transaction is morally right; but seeing that if a trustee were permitted to purchase in an honest case, he might do so in one having that appearance, but which, were it not for the infirmity of human testimony, or falsehood, would appear to be grossly otherwise, it has thought fit to lay down a general rule on the subject.' ''

The Court, in the case of White v. Trotter, supra, further commenting upon the rule, said: ''It was not necessary in such cases to prove that the purchaser made a profit, or that loss resulted to the other parties; the law acts on a general principle of public policy.''

In 37 Am. Jur., Mortgages, page 124, is the following: ''The general rule that a trustee cannot purchase at his own sale applies to a sale by a trustee under a deed of trust, and this rule applies to a sale under a corporate deed of trust.''

■■ It will be noted, therefore, that it is long established under the authorities generally and under the prior pronouncement of this Court that the motive of the parties or the question as to whether or not the parties acted honestly and in good faith are immaterial. The rule is grounded upon a long established public policy. Likewise it is well settled under the decisions of this Court that where the husband cannot purchase at a trustee's sale, the wife is also incapable of purchasing. Walker, et al. v. Woods, et al., 166 Miss. 471, 144 So. 703. In the case of Walker v. Woods, supra, the Court said:

"We are further of the opinion that Lucretia Walker was incapable of purchasing at the trustee's sale, on account of the fact that her husband could not purchase at such sale. It is the public policy in this state to prohibit a wife from purchasing under such circumstances as her husband could not purchase on account of a fiduciary relationship."

Such was likewise the holding of this Court more than a half century ago in the case of Brandau v. Greer, 95 Miss. 100, 48 So. 519. In announcing the doctrine in the Brandau case, the Court said: "Under the facts of this case it does not become a question as to whether or not Brandau has acted honestly or dishonestly in the matter of acquiring this title. We do not consider this case from that standpoint. But the question is, can such a transaction as this be allowed to stand, in any event, in a court of equity?"

Further in the same case, the Court said: "Under the facts of this case Brandau and his wife must be treated as the same person. If it was unlawful for Brandau to acquire from his wards the title to their property, it could never be held that one holding so close a relationship to him as that of wife, and with such identity of interest as usually exists between parties sustaining this

relation to each other, could lawfully acquire a title which the husband was forbidden to acquire.''

In that case, the Court futher said: ''Under all settled rules of law it must be held that whatever title was acquired by either Sebastian W. Brandau, or his wife, under any of the sales or dealings with this property, either by themselves or at the instance of any other party, is held as trustees for the benefit of complainants. No transaction of this sort can or ought to be allowed to stand. It contravenes every rule of law applying to a person in a fiduciary character.''

We are accordingly of the opinion and we hold that Henry Mounger, the trustee, was prohibited from purchasing at the coreclosure sale and that his wife, Mrs. Mounger, was likewise prohibited from purchasing at the foreclosure sale, and that the attempted conveyance of the property to her as such purchaser was null and void.

Since the sale of the property to Mrs. Mounger, the wife of the trustee at the foreclosure sale, and the attempted conveyance of said property by said trustee to his wife were null and void, the relationship of tenants in common as between the appellant and the other heirs of F. M. Lee and the grantees of some of said heirs existed at the time of the attempted acquisition of said property by the said Luther L. Lee under the deed executed to him by Mrs. Henry Mounger, Jr., and the said Luther L. Lee therefore held the property for the benefit of all of his cotenants.

Appellant argues, however, that the appellees are now estopped to assert title to, or interest in, the property upon the ground of laches, and in this connection, he argues that the appellees are further precluded from now claiming the property for the reason that the appellees have made no attempt to contribute within a reasonable time their proportionate share of the amount expended by Luther L. Lee in purchasing

an adverse title, and that, therefore, the appellees have abandoned their claim to the benefit of the purchaser. It is well settled, however, that before a cotenant can be held to have so abandoned a claim it must appear not only that he has been apprised of the purchase but also that he has been made aware of the claim set up by the purchasing cotenant. 14 Am. Jur., Cotenancy, page 128. It is further said in 14 Am. Jur., Cotenancy, page 128, as follows: "Until he has such knowledge he may reasonably presume that the acquisition was made in support of the common title, and will be justified in acting on that presumption."

The proof for the appellees, which was found to be true by the chancellor, showed that when the heirs were first apprised of the fact that Velma Hart Mark was claiming the property under a conveyance from the appellant, they spoke to the appellant about the matter and he stated that he would see that they got their share, and neither demanded or claimed any contribution from the heirs. According to the testimony of one of the witnesses, he said that after it later developed that the appellant was claiming to be a bona fide purchaser of the property this suit was instituted. We think that under these circumstances it cannot be said that the appellees should be estopped from asserting claim to the property under the doctrine of laches. Certainly it does not appear that the delay in bringing the suit in this case worked any disadvantage to the appellant. In the case of Dampier, et al. v. Polk, et al., 214 Miss. 65, 58 So. 2d 44, we held the following: "Laches is not mere delay, but delay that works a disadvantage to another, and so long as the demands secured are not barred by the statute of limitations, the doctrine of laches is not applicable in the absence of a showing that the delay has worked injury or disadvantage to the party asserting the doctrine."

■ ■ Of course the action of the appellees in this case is not barred by any statute of limitation. The only property here involved is the oil, gas and minerals in the land. There was a severance of the minerals by reason of the reservation of the minerals in the appellant in his attempted conveyance of the surface to Velma Hart Mark.

In the case of Levy, et al. v. Campbell, 200 Miss. 721, 28 So. 2d 224, we held the following: ''Adverse possession of the surface, or that which is above it, will not operate as an adverse possession of a separate estate which is beneath the surface and which has not been used in connection with the adverse possession of the surface.''

In the case of Cook v. Farley, 195 Miss. 638, 15 So. 2d 352, we held that where surface and mineral estates have been severed, adverse possession of minerals must consist of actually taking possession thereof by drilling wells or digging mines and capturing and taking possession of minerals, either by producing and removing them, or by holding them capped in a completed well to the exclusion of a mineral title holder and the world for a statutory period of adverse possession. Of course, there is no proof in this case that such possession was taken of the minerals, and, in fact, the proof is to the contrary.

In the light of the views hereinbefore expressed, we are clearly of the opinion that the decree of the court below is correct and that the same should be and is affirmed.

Affirmed.

*Roberds, P. J.*, and *Arrington, Ethridge* and *Gillespie, JJ.*, concur.