587 So.2d 266 (1991)
EASTOVER BANK FOR SAVINGS
v.
Don A. HALL.
No. 90-CA-0333.
Supreme Court of Mississippi.
September 18, 1991.
*267 Willard L. McIlwain, Jr., Greenville, for appellant.
Kinney M. Swain, Greenville, for appellee.
En Banc.
PITTMAN, Justice, for the Court:
Eastover Bank for Savings ("Eastover") appeals from a judgment of $12,713.62 rendered against it by the Washington County Chancery Court due to Eastover's wrongful foreclosure of certain real property owned by Don Hall. Eastover assigns two errors in the lower court. Don Hall alleges two errors on cross appeal. Finding both direct and cross appeal to be without merit, we affirm.

I.
On September 17, 1979, Don Hall purchased certain real property located in Washington County, Mississippi. The deed of trust on the property was held by Eastover. By July 1988, Hall had fallen behind on his mortgage payments to Eastover, and as a result Eastover took steps to foreclose on the property. Charles Mayfield, Jr., served as substitute trustee. Mayfield executed a Substituted Trustee's Notice of Sale on June 29, 1988. The notice set July 21, 1988, as the date for the foreclosure sale, to be held at the Washington County Courthouse. The notice also provided for dates that it should be published.
On July 21, 1988, Charles Mayfield executed a substituted trustee's deed, signifying that the foreclosure sale had been held, that Eastover Bank had bid $17,286.38 for the property, and that the property had been sold to Eastover for that amount. In mid-August Mayfield was attempting to reconcile his business accounts when he discovered a deposit of $1905.30 in his business trust account. On further investigation, he discovered that it was a deposit which had been made by Don Hall on July 21, 1988, at the Trustmark Bank in Greenville. $1905.30 was the amount that Hall owed on the mortgage in question. The deposit had been made in the afternoon and was credited to Mayfield's trust account on July 22. Mayfield returned the amount to Hall via check and certified mail on August 19, 1988. Hall refused to accept the letter. Eventually Eastover returned $1905.30 to Hall.
Don Hall filed suit against Eastover and Charles Mayfield on January 27, 1989. Hall alleged that he and Mayfield had agreed that Hall could pay his mortgage by depositing the amount owed in Mayfield's trust account, and Hall had done that on July 21, 1988, before the foreclosure sale had taken place. Hall further alleged that in spite of this, Mayfield or his agent had wrongfully continued with the foreclosure sale even though the indebtedness had been paid. Hall later amended his complaint to include the allegation that the foreclosure sale had actually never taken place. Hall asked for actual and punitive damages.
The trial in this cause was held on February 26 and 27, 1990. Don Hall, a bail bondsman who had been in the real estate business, testified that he had spoken with Charles Mayfield, Jr., on July 19, with Mayfield asking him whether or not he was going to save the property. Hall stated that he was planning to, and Mayfield gave Hall his trust account number for Trustmark Bank in Greenville. Hall stated that Mayfield instructed him, when he made the deposit, to give the account number to the teller and to have her call Mayfield's Jackson bank, and verify with them that the money had been deposited. Mayfield also informed Hall of the amount which was needed to bring the mortgage current. Hall stated that he had been in a similar situation with Mayfield at least four other times, and he had twice reinstated the mortgage by depositing the correct amount in Mayfield's trust account in the Trustmark Bank. The other two times Hall paid his arrearage directly to Mayfield or Mayfield's son on the day of foreclosure.
Hall, accompanied by his nephew, Freddie Hall, and $1905.30 in cash, arrived at the Washington County Courthouse on July 21, at around 10:45 a.m. Hall had the money with him. Hall first checked with *268 Leola Jordan in the chancery clerk's office to find out if Mayfield had been there to foreclose the property. Finding that the sale had not yet taken place, Hall and his nephew remained at the courthouse until around 12:55 p.m. At that time, Don left and headed to the Trustmark Bank. Freddie remained at the courthouse. At Trustmark, Don was waited on by Cosetta Gray, a teller. Don deposited $1905.30, the necessary amount, into Mayfield's trust account. Hall claimed that the time was 1:00 p.m. or just after. Hall instructed Gray to call the Jackson bank and inform them that the deposit had been made. Hall then returned to the courthouse. He met with Freddie, and they waited at the courthouse for approximately thirty minutes. Both left around 2:00 p.m. Don Hall returned to the courthouse around 4:00 p.m. He checked with Leola Jordan in the clerk's office once again. According to Hall, there had been no notation of any foreclosure sale.
In August, when Hall went to collect the rent from the tenants living at the subject property, he was told that someone had informed them that they no longer had to pay rent to Hall. Hall then called Mayfield. Mayfield told Hall that he had discovered the deposit, and referred Hall to someone employed by Eastover to see about the possibility of setting the foreclosure aside. Eastover refused to do so.
Charles Mayfield, a practicing attorney for thirty years, had been taking care of foreclosure files for Eastover for around two years. Mayfield stated that he and his son had done all the preliminary work on the foreclosure of Don Hall's property and only needed someone to conduct the foreclosure sale, so they hired Mike Boyd, a Greenville attorney. This was the first time Mayfield had used Boyd to conduct a sale. Mayfield stated that he confirmed the sale results with Boyd sometime on the 21st. Mayfield agreed that Don Hall had deposited money into his account on one previous occasion in order to save property from foreclosure. Mayfield also said that on a previous occasion Hall had come to Jackson and personally paid the required amount to Mayfield. Another time Hall had paid the money at the courthouse in Greenville. Mayfield stated that the instructions he "would have given" Hall would have been to have wired the funds to the Trustmark Bank in Jackson, along with a request that the bank officer communicate a confirmation to Mayfield. Then Hall should have confirmed with Mayfield that the funds had been received. Mayfield stated that Boyd confirmed to him in writing that the sale had occurred on July 21, and he remembered the time of the sale being reported as around 1:05 p.m. He had since changed his mind about the time of the sale.
Mike Boyd testified that he recalled the events of July 21, 1988, "very well." A close friend of Boyd's died in Jackson on that day. Boyd had talked with Charles Mayfield and Mayfield's son and law partner, Mark about the foreclosure, but he could not remember when. The only details Boyd could give about his actions concerning the sale were that he "read the substituted Trustee's Notice of Sale." Boyd was a member of the Greenville Appeal Board. The Board had a meeting on the afternoon of July 21, but Boyd could not remember attending the meeting. He did not remember how he had received the bidding instructions from Mayfield. Boyd testified that he called Mayfield late on the afternoon of July 21. According to Boyd's appointment calender he was in bankruptcy court until noon or after, then conducted the Hall sale, followed by a 2:00 appointment with one Thomas Boyd and another meeting after that. Boyd admitted that he had recently contacted various people to find out who, if anyone, had been at the foreclosure sale with him. He stated that he had discovered that Mischa Harper, who worked in the tax assessor's office, had been. Boyd denied that he had performed the sale between 1:00 and 2:00 p.m.
Freddie Hall, Don Hall's nephew, corroborated his uncle's timetable and version of the events of July 21. Freddie testified that no one conducted a foreclosure sale during the time that he was at the courthouse. Freddie was acquainted with Mike Boyd and he never saw Boyd that afternoon. *269 Freddie, an employee of Howard Bonding Company, got a call from the company a little after 1:30 and left the courthouse between 1:45 and 2:00 to go to the Greenville Police Department. Freddie did not return to the courthouse that afternoon.
Tracy Howard worked at Howard Bonding Company on July 21, 1988. Don and Freddie Hall worked as bail bond agents for the Howard Bonding at that time. Tracy testified that on that date she received a bond call and contacted Freddie Hall on his beeper. She then received a call from Freddie, who was at the courthouse, between 10:30 and 12:30. She got another call from Freddie around 1:30 p.m. He had already been to the police department to check on the bond at this time.
Cozetta Gray, the teller at Trustmark Bank in Greenville, testified that Don Hall made a cash deposit with her on July 21, 1988. Hall also asked her to make a call to a Jackson bank to confirm that the deposit had been made. Gray supplied the name of the account, the account number, Trustmark's routing number, and the amount deposited. Gray stated that the deposit was made after 1:00 p.m., as that was the cut-off time for having a deposit credited to an account on the same day. She was able to testify that Hall had made the deposit at around 2:45 p.m., as she had checked her time card for that date.
Over Don Hall's objection, Eastover called Mischa Harper, who was working in the tax assessor's office on July 21, 1988. Harper testified that she had received a call from Mike Boyd, a close friend, and as a result met him in front of the courthouse, sometime after two in the afternoon on the 21st. She stated that Boyd read from a docket form. As to the foreclosure sale, she only followed Boyd's instructions and did not fully understand what she was doing.
Dorothy Bryant testified over Don Hall's objection. Bryant's son, Fred had died in Jackson on the morning of the 21st. Mike Boyd, a friend of Fred's, arrived at Dorothy Bryant's home around noon. Bryant could not remember how long Boyd stayed or when he left.
The chancery court found that Mike Boyd had conducted the foreclosure sale between 2:00 and 3:00 p.m., probably around 2:30, on July 21, 1988. But for the testimony of Mischa Harper, the court would have found that no sale had occurred. The court further found that at approximately the same time, or around 2:45 p.m., Don Hall was depositing the required amount with the Trustmark Bank. The court found that Hall was following a procedure for reinstatement which he had followed one time before, and followed a procedure on July 21, which had been provided as an option by Charles Mayfield. Concerning the question of notice to Mayfield as far as the depositing of funds, the court found that Mayfield, under a fiduciary duty to the mortgagor Don Hall, had the duty to determine if the funds had been deposited if Mayfield had indeed offered the method of depositing the required amount in his trust account as a means of reinstatement. The court found in favor of Don Hall and solely against Eastover, awarding actual damages of $12,713.62, the difference between the value of the property in question, $30,000.00, and the expenses of the sale along with the outstanding indebtedness, $17,286.38. Punitive damages were not awarded.

II.
Eastover alleges that there is no proof to support the chancellor's finding that Don Hall's actions on June 21, amounted to a tender of the amount owed on the mortgage and a reinstatement of the mortgage. The sale by a trustee under a deed of trust is presumed valid and the burden of proof is on the party attacking this validity. Myles v. Cox, 217 So.2d 31, 34 (Miss. 1968). As to the powers of the trustee, this Court provided, in Lake Hillsdale Estates, Inc. v. Galloway, 473 So.2d 461, 465 (Miss. 1985):
The trustee is the agent of both parties. Lee v. Lee, 236 Miss. 260, 109 So.2d 870 (1959); Rawlings v. Anderson, 149 Miss. 632, 115 So. 714 (1928).

*270 In a deed of trust the trustee is under a duty to perform his duties in good faith and act fairly to protect the rights of all parties equally. Webb v. Biles, 192 Miss. 474, 6 So.2d 117 (1942). However, the trustee cannot generate bidders, but it is the trustee's duty to sell the land in such a manner as will be most beneficial to the debtor. Rawlings, supra.

Wansley v. First National Bank, 566 So.2d 1218 (Miss. 1990) refined this standard and held it satisfied where every aspect of the foreclosure sale was conducted in a "commercially reasonable" manner. The findings of fact made by the chancellor are reviewed under the manifest error/substantial credible evidence rule. Peoples Bank & Trust Co. v. L & T Developers, 434 So.2d 699, 704-05 (Miss. 1983).
The lower court relied on Chancellor v. Melvin, 211 Miss. 590, 52 So.2d 360 (1951), and 60 Am.Jur.2d § 28 (1987) on the matter of payment. Am.Jur. states that "[p]ayment is also made when the obligor deposits a sum in the obligee's bank account with the obligee's approval." In Chancellor, Melvin, the property owner, borrowed a sum from his bank and deposited it in his contractor's account with the contractor's approval. The contractor accepted that amount and used those funds to construct a house for Melvin. This Court recognized that an owner could pay his principal contractor "in any method and at any time they agree on." Chancellor, 211 Miss. at 602, 52 So.2d at 366.
Don Hall testified that Mayfield instructed him that he could deposit the required funds in Mayfield's trust account. Hall also stated that he had followed this procedure twice before. Mayfield testified that Hall had reinstated the loan once before by depositing funds in this trust account. Mayfield also discussed instructions that he "would have given" to Hall to properly reinstate via a bank deposit. Later Mayfield implied that he had given these instructions to Hall and Hall had not followed them. The chancellor's finding, based on conflicting evidence, that there was an agreement on the reinstatement method, and that Hall followed one of the methods agreed on, is not in error.
"When a party tenders a payment to another, the latter must accept or reject the tender as made. If he accepts, he is bound by all the terms of the tender and he can avoid it only by return of the tender." State v. Mize, 204 Miss. 886, 889, 36 So.2d 143, 144 (1948). We find that the tender by Hall was made and accepted by Eastover through Mayfield, based on the aforementioned agreement. This issue is without merit and the lower court is affirmed in this regard.

III.
Michael Boyd was deposed in this cause some months before trial. His deposition testimony showed that he had little recollection of the events of the day of June 21. His best recollection during the deposition was that he had conducted the foreclosure sale between 1:00 and 2:00 p.m. that afternoon. At trial, Boyd claimed that his memory had been refreshed by a conversation with Mischa Harper, who was alleged by Boyd to have assisted him during the foreclosure. Don Hall objected to Boyd's "refreshed" version of the events of that day, arguing that the testimony would be merely repetitive of what Harper had told Hall, i.e. hearsay. The lower court agreed and sustained the objection. On proffer, Boyd testified that around noon on June 21, he went to the home of Dorothy and Fred Bryant, where he stayed for two or two and a half hours. He then returned to the courthouse and conducted the foreclosure sale. This testimony would put the time of the sale past 2:00, after Don and Freddie Hall had left the courthouse.
Though this is an original approach, it appears that Eastover is really attempting to introduce inadmissible hearsay through Mike Boyd. Rule 612 is the only mechanism in the rule of evidence for refreshing one's recollection, and Rule 612 is clearly limited to a writing, or in the most expansive view, some tangible thing.
Miss.R.Evid. 612 states:
If a witness uses a writing to refresh his memory for the purpose of testifying, *271 either (1) while testifying, or before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce into evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires, except that in criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial.
Rule 612 does not apply to out-of-court statements. We find no case where a witness has been allowed to refresh his recollection and testify, basically as to what another witness has told him. If Eastover's view was followed, then 612 would become a vehicle for circumventing the prohibition against hearsay testimony.
Boyd's proffered testimony is inconsistent with his deposition testimony in that he was unable to say much about the time he supposedly performed the foreclosure sale or did anything else on July 21. The deposition testimony is too vague to be strongly at odds with his proffered testimony. The trial court did not abuse its discretion in excluding the testimony in question.

IV.
During the course of this litigation, Don Hall served a set of interrogatories on Eastover and Charles Mayfield. Eastover evidently filed answers to these interrogatories. Neither the interrogatories nor the initial answers are included in this record. On February 21, 1990, with trial set to begin on the 26th, Eastover filed supplemental answers to interrogatories. The answers were not signed by Eastover or Mayfield. The answers were hand-delivered to counsel for Don Hall on February 16, 1990. In response to Interrogatory 1, asking for the name and address of every lay witness having knowledge of any facts relevant to this suit, Eastover supplied the names of Mischa Harper and Dorothy Bryant. Apparently these names had not been supplied in the earlier answers. Don Hall objected to the testimony of these two witnesses on two grounds: the answers were not signed and sworn to as mandated by Miss.R.Civ.P. 33(a), and the answers were not supplied in a timely fashion to avoid prejudice to Hall. Mischa Harper's testimony was especially important, as the trial court stated, in its opinion, that but for Ms. Harper's testimony that she was at the foreclosure sale along with Mike Boyd, the court would have found that no sale had occurred. Counsel for Don Hall apparently was able to make some contact with Mischa Harper via a private investigator between February 16 and February 26. Hall alleges on cross appeal that the lower court erred in allowing the testimony of these two witnesses.
Miss.R.Civ.P. 33(a) states in part that "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. The answers are to be signed by the person making them, and the objections signed by the attorney making them." The language appears to be mandatory. Don Hall relies on federal authority which holds that interrogatories which are not completed in compliance with the rule are invalid. See, e.g., McDougall v. Dunn, 468 F.2d 468 (4th Cir.1972); Cabales v. United States, 51 F.R.D. 498 (S.D.N.Y. 1970), aff'd, 447 F.2d 1358 (2nd Cir.1971); but see Rea v. Wichita Mortgage Corp., 747 F.2d 567 (10th Cir.1984).
In conjunction with Rule 33, Hall also relies on Miss.R.Civ.P. 26(f), which states in part:
(f) Supplementation of Responses. A party who has responded to a request for *272 discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons (i) having knowledge of discoverable matters, or (ii) who may be called as witnesses at the trial, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.
(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.
This Court has laid down no hard and fast rule as to what amounts to seasonable supplementation or amendment of answers. See, e.g., Motorola Communications & Electronics v. Wilkerson, 555 So.2d 713 (Miss. 1989) (identification of expert ten days before trial did not amount to discovery violation); Jones v. Hatchett, 504 So.2d 198 (Miss. 1987) (trial court erred in allowing expert doctor to testify when his name had been revealed four days before trial, and no information was provided on the subject matter of his testimony); Harris v. General Host Corp., 503 So.2d 795 (Miss. 1986) (trial court erred in allowing expert doctor to testify as rebuttal witness where his name had not been revealed through discovery); Kern v. Gulf Coast Nursing Home of Moss Point, 502 So.2d 1198 (Miss. 1987) (no error to allow nurses to testify as occurrence witnesses, when they testified in this manner and not as experts).
The predominant concern is whether there has been prejudice to Don Hall. An abuse of discretion on the part of the lower court would be difficult to find otherwise. Hall relies on Maryland Casualty Co. v. City of Jackson, 493 So.2d 955 (Miss. 1986), and Clark v. Mississippi Power Co., 372 So.2d 1077 (Miss. 1979), which was decided prior to the adoption of the Rules of Civil Procedure. Clark first answered interrogatories served on him in an incomplete manner, but promised in the answer to file a supplemental answer at a later date. Three months after the original answers were filed, Mississippi Power filed a demand for its answers. No supplementation was made. However, it was clear from the record that about six weeks before trial, Clark informed counsel opposite of the name and address of a certain engineer who would testify at trial. When the engineer was called as an expert at trial, Mississippi Power objected. The engineer was not allowed to testify. Relying on the "wide discretion" of the trial court in discovery matters, this Court held that there was no abuse thereof and affirmed. Clark, 372 So.2d at 1080.
Mischa Harper and Dorothy Bryant were not expert witnesses, as in several of the cases noted above, and this figured in the lower court's decision as to how much time Don Hall might have needed to prepare for their testimony. Also, Hall had managed to have an investigator interview Harper. We find no abuse of discretion in the chancellor's decision to allow testimony of these two witnesses.

V.
Don Hall further argues on cross appeal that the trial court should have awarded punitive damages against both Eastover and Charles Mayfield. Both parties cite National Mortgage Co. v. Williams, 357 So.2d 934, 936 (Miss. 1978), a case of wrongful foreclosure, which provides:
The first assignment of error was to the effect that the appellee was entitled to only nominal damages and was not entitled to recover punitive damages. It is well established law in this state that the elements allowing punitive damages are: (1) a wrongful act, (2) intentionally performed, (3) gross disregard of rights, and (4) willfulness.
This principle was clearly laid down in Illinois Central R. Co. v. Ramsay, 157 *273 Miss. 83, 127 So. 725, 726, where the court said: "To authorize the infliction of punitive damages, the wrongful act complained of must either be intentional, or result from such gross disregard of the rights of the complaining party as amounts to willfulness on the part of the wrongdoer."
In Hadad v. Lockeby, 176 Miss. 660, 169 So. 691, 693, the court said: "Punitive damages may be recovered, not only for a willful and intentional wrong, but for such gross and reckless negligence as is equivalent to such a wrong, since an act done in spirit of wantonness and recklessness is oftentimes just as harmful as if prompted by malice." [Milner Hotels, Inc. v. Brent] 207 Miss. [892] at 899, 43 So.2d [654] at 655 [(1949)].
We find that the actions of Eastover and Charles Mayfield do not reach the level necessary for the imposition of punitive damages. The chancery court was correct in so finding. Its judgment is affirmed in all respects.
AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS APPEAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and McRAE, JJ., concur.
BANKS, J., not participating.